Good morning, this is 20-1124, Meagher v. U.S. Department of State. Council please prepare to argue by making sure your cameras and microphones are on. Thank you. We're ready to hear you, Council. Thank you. Good morning, Your Honors. Ben Cohen for the appellant Jeffrey T. Meagher. Your Honors, this appeal presents a straightforward question. May the government collect debts by revoking a debtor's constitutional right until he pays up? That is what the FASTAX passport revocation regime does. Revokes citizens' constitutional rights to travel abroad, effectively revokes their passports, which is legally equivalent to revoking their constitutional right to travel abroad. And it does so not because of any national security concerns or foreign policy concerns or public safety concerns, but simply to coerce payment of a debt. That is not constitutional. We have offered the court three independent bases for finding the FASTAX passport revocation regime to be unconstitutional. Privileges and immunities, substantive due process, and ne exeat. I would like to address all three. I'm going to start with substantive due process, and I'm going to address it briefly because that is the most thoroughly briefed legal argument. So starting with substantive due process, the controlling case law for this court's analysis comes from the U.S. Supreme Court and the Tenth Circuit itself. So I think it might be a good idea to start with helping us determine whether we're talking here about fundamental rights, such as freedom of speech, or whether we are talking about privileges or some other lesser entitlement to benefits by an American citizen. Evaluating this case, it brought me back to the old 101A legal studies when we had to determine the definition of terms. Remember Dean Hofeld at Yale, they called it Hofeldian terminology, and he determined a series of correlatives. The correlative of a right was a no right. The correlative of a privilege was a duty or discretion, and so on and so forth. So if we look at a fundamental right, the correlative would be that there is no right to interfere with that right. In reading your brief, I found it a little unsatisfying, and I say this critically also the government's brief, that you folks were throwing around right and privilege as if they were the same thing, which they are absolutely clearly not. So looking at whether a right is fundamental in the terms, in those kinds of terms, we are instructed by the Supreme Court to look at the history of the right, to hold it up almost like a chemical tube and analyze it to see what we have there. What is your best argument for the proposition that this right is fundamental in the truest sense of the word? Magna Carta, Blackstone, as reviewed in Kent v. Dulles, the first of the cases addressing international travel. That's the 1958 communist case where the Supreme Court confirmed, we've maintained, that the right to travel internationally is a fundamental right, no question about it. As the court held in that case, it originates in Magna Carta. It is, quote, part of our heritage, basic in our scheme of values. That is the lexicon of fundamental rights. That was repeated in 1964 in the Aptheker case, also a communist case, where the court reaffirmed the holding in Kent, noting that restrictions on, quote, fundamental personal liberties, unquote, must be narrowly tailored. That is a rock-solid holding by the Supreme Court that the right to travel internationally is a fundamental right. Well, counsel, both of those cases also dealt with infringement of First Amendment protections. So that isn't true of your case. Isn't that an important distinction relative to Kent and Aptheker? Kent and Aptheker themselves noted that there were expressive considerations involving the communists' political beliefs. But they did not hold that their, they did not reverse the government's conduct there based on First Amendment concerns. They simply noted it. Both Kent and Aptheker grounded their holdings entirely on the fundamental status of the right of international travel. Now, let's come back to, I think Judge Lucero really put his finger on the issue here. Has the Supreme Court in any case explicitly, I'm not saying implicitly or putting, connecting dots or anything like that, but has it ever explicitly said that international travel is a fundamental right? No, nor has it said the converse, that international travel is not a fundamental right. Rather, what we have from the Supreme Court are a lot of cases, including the ones we've just discussed, and then the starting in the 70s, the welfare benefit cases, where the Well, if it's walking back, if it's walking it back, and finally we get to these cases, Agee and, as Navorian, that draw distinction between interstate travel and international travel, and the court's been very clear that the standard of review of interference with both of those is to be judged under different standards. And the court has also been clear that interstate travel is fundamental. So if there's no explicit recognition of a fundamental right to international travel, where does that leave you? Well, I suppose where it leaves you is in the Constitution, correct? And is there anything in the Constitution that grants to the government the power to limit the right to travel? The government has the right to issue passports for purposes of identification of American citizens, but I find nothing in the Constitution that grants the Supreme Court or anyone else the power to limit the right of American citizens to travel absent their conviction, for example, of a crime where civil rights and civil liberties are terminated during the period of the judgment. But I find nothing whatsoever that grants the government the power to give permission, as it were, to American citizens to travel. I agree, Your Honor. There's nothing in the Constitution directly addressing this beyond the right to travel generally being grounded in the Fifth Amendment's liberties provisions. Is that a fatal admission? No, no. Doesn't the Fifth Amendment say that if you're subject to the requirements of the due process provisions of the Fifth Amendment, that then all of a sudden you get into this whole range of government responsibilities and duties? Judge Lucero, this is what I was hoping to avoid. The briefs thoroughly address the substantive due process analysis. We acknowledge that there is tension in the Supreme Court's case law, and I could easily spend the entire day going through all of the cases. We would simply say, Your Honor, that we stand on our analysis. We maintain that Kent and Aptheker held that the right of international travel is a fundamental right. The Supreme Court has never expressly reversed or repudiated that holding. It has only qualified it in various ways. And we would suggest that if this Court is in doubt— by the way, this Court held the question open in Obd v. Wray, which I know Judge Phillips was on, and did so correctly, I think, and prudently. This is the case to make the decision about the status of the right of international travel. If the Court is in doubt in either direction, if the tension in the Supreme Court's case law makes this a too difficult a decision or makes it hard to clearly come down on one side or other, we would submit that the Court should take the position that is more protective of civil rights, kind of like an analog of the criminal law rule of lenity, and find that or hold that the right of international travel is a fundamental right because the Supreme Court said so, and it is not expressly repudiated. Counsel, I'm really interested in this point you just made. So, can you cite to an example where the Supreme Court, or really any Court, has decided to recognize or create a fundamental right because things are unsettled? I mean, recognizing a fundamental right is a big step for a Court to take. So, give me an example where that's happened. All I can give you, Judge Matheson, is the fact that the Supreme Court did recognize the right of international travel. No, that's not what I asked. I'm asking for a case that matches the argument you just made. Do you have support for your argument with a case? I have no case law to support that argument. All right. Let me just ask you about your naysayot theory. I'm very interested in how that links to the rest of your argument. Tell me if I've got it right, but it seems like what you're saying is that the statute 7345 is a form of a naysayot. That's the way it's being used here. Exactly. And that naysayot is subject to due process restrictions. Am I okay so far? That is correct, Your Honor. Okay. Why doesn't that, though, just take us back to whether international travel is a substantive due process right? Don't the arguments just collapse on each other? No, Your Honor. I think that the naysayot analysis informs the substantive due process analysis. Ever since Reno v. Flores and Washington v. Glucksburg, substantive due process rights are now analyzed according to a binary system. It's either fundamental, in which case it's sacrosanct, or it's not fundamental, in which case the government can do whatever. Well, there's the intermediate scrutiny cases. Uh, there are intermediate scrutiny cases under equal protection, which is what Unique v. Powell, one of the judges there on the Ninth Circuit case, decided should apply here. Something in between. That might be the best way to think of naysayot. What we would submit, Your Honor, is that the naysayot cases, starting with Shaheen in 1971, consistently have recognized that there is a constitutional dimension to the right of international travel. And without characterizing that constitutional dimension as being either fundamental or non-fundamental, it's at least important enough that the government may not restrict your right of international travel unless it can establish the naysayot predicates that you're trying to sneak money out of the country, or that you've already done so, and you won't bring it back. That's the predicate of naysayot, and Your Honor is correct. It is perfectly applicable here, because passport revocation is legally equivalent to issuing a writ of naysayot. Okay, so at one point in your brief, you call this your most compelling argument. Is this really your most compelling argument, the naysayot? Would you recommend that we really go there first? I'm sorry, Your Honor. I would recommend that you go there last, because we view it as a backstop argument. This one is the most clearly falls in our favor. We would urge the court to decide this on the issue of substantive due process, when we maintain that the right is fundamental, and importantly, privileges and immunities, which it doesn't look like I'm going to get time to argue. Doesn't that sort of cut against the idea that courts should show restraint in recognizing new fundamental rights if they can decide the case on a different ground? Yes, the doctrine of constitutional avoidance ordinarily counsels that, but naysayot does not fit into constitutional avoidance. You're still dealing with constitutional rights under the naysayot analysis. Yeah, it seems like it's a less aggressive path to take. Would you agree with that? I would agree with that. It is less aggressive than going into the substantive due process analysis. However, in addition to that analysis, there is this privileges and immunities analysis, which we maintain fits perfectly. The Supreme Court has said that when it has a doctrine that fits perfectly, lower courts are obliged to follow it. That's the Agostini v. Felton holding, and that is a holding that applies here. The court should apply privileges and immunities. The right to travel is an established privilege. Thank you, counsel. I think you wanted to reserve some time, did you say, or? I will do so. I'll reserve what little I have left. Thanks. Thank you. Counsel? Thank you, Your Honor, and may it please the court. My name is Kathleen Lyon, and I represent the Department of State. You made an interesting argument in your brief. This issue of international travel is a novel occurrence in American history. I guess I'd start by asking you whether the pilgrims had passports. No. No. No, no. So the point is that America began with the pilgrims, with the conquistadores, with any number of the first arrivals, the non-Indigenous arrivals in this continent, all came here exercising a fundamental human right, namely the right to travel internationally. They didn't have to say, Mother, may I, to anyone, not to a king in Spain, not to a queen in England. They didn't have to seek permission from anyone. They came here in search of liberty and freedom. And here they are in the United States. Now we're arguing that for purposes of tax collection, the United States government, exercising some power I can't find anywhere, has the power to imprison and jail itself, fundamentally jail its citizens, to prohibit them from traveling internationally. Why isn't this case an unconstitutional infringement on a right, whether it is fundamental or whether it is some lesser species of right that is not acceptable under our constitutional norms? Well, Your Honor, it is undisputed in this case that legislative restrictions on international travel are governed under the substantive due process framework, that it is a Fifth Amendment liberty interest. And it is certainly true that in Kent, the court did examine the history and the Magna Carta, and it nonetheless decided not to decide the constitutional issue. And we believe that the other Supreme Court cases make it clear that the right to international travel, or the liberty interest, simply is not the equivalent of the fundamental right of interstate travel. So let me ask you a couple of questions about the act you refer to. Does this act that you refer to take into consideration the ability of a taxpayer to pay? If a taxpayer does not have the ability to pay the tax, it's basically a debtor's prison, correct? No, that's not correct. 7345 has both exclusions and the opportunities to be decertified that are relatively easy to get out of. Specifically, if a person is not collectible, or if someone's not collectible, they can do what's called an offer and compromise. And that's provided in section 7345. If it's not collectible, they can go through a whole process of basically collection efforts. Hey, let's settle this case. I'll pay you x if you let me go. Those are just basically collection techniques. Because basically, the discretion is left to the bureaucrat, correct? The statute does not require, if a taxpayer finds himself in the unfortunate situation or herself of owing $50,000 and the inability to pay it, it doesn't provide that the passport has to be revoked. It says it may be revoked. Somebody up there in D.C. in the Department of State apparently has a decision to say this taxpayer may travel or may not travel, depending on how sincere she or she is about paying their taxes. No, the State Department doesn't have any insights into the status of the taxpayer. The only information it receives is the name and the amount and the fact that the person has been certified. So everything would happen within the IRS, essentially. But again, section 7345 provides for the offer and compromise. And I want to point out, there is an offer and compromise based on doubt as to collectibility. If you are not collectible, you can go to the IRS and say, I'm not collectible. They will have to fill out a form to explain their financial situation. It's up to the IRS if I find myself in this unfortunate situation, whether I can travel or not. Sounds to me like that's still part of a collection effort. If I got to go to the taxpayer, what strikes me about this case, looking at it, is I thought we got past debtor's prison a long time ago. And this sure looks to me like nothing more than debtor's prison. If you can pay your taxes, whatever. Now, if the non-payment of taxes is fraudulent or in some other way arises to the level of criminality, you bet your bottom dollar. The United States government can go after that cheating taxpayer, convict her, and at that point, all rights are revoked. But what you're asking us to sanction is some kind of this little shortcut where we use the courts and passport control to help you pick up, to help the United States government collect taxes. I thought the United States government and the Internal Revenue Service had all kinds of tools in their little toolbox to collect taxes from taxpayers who don't pony up and pay what they owe. Why do they need this one? Why do they need this tool? The narrow subset of taxpayers who are subject to the certification under 7345 have already had the opportunity to challenge their liabilities. The IRS has to have undergone the administrative collection procedures that it can. And that's liens and levies. And the taxpayers have every opportunity to challenge that all the way up through the Court of Appeals. And these are people who, nonetheless, despite all of that, have not paid. And under this court's rule, and Abdi and Diaz and Dawson, if a right is not fundamental, as we believe international travel is not a fundamental right, then a rational basis applies. That's what this court has said. And we think that the statute does serve a legitimate interest. It's undisputed. It's also undisputed that the statute is reasonably related to that interest. And that's what we have to say. Can I just jump in here for a second? Why doesn't the government need a stronger justification to interfere with freedom to go to a football game? I mean, doesn't international travel, whether you call it fundamental or something short of that, require a strong justification from the government to interfere with that freedom? I mean, are we back to this, as counsel, as Mr. Cohen said, this sort of binary, it's sort of all or nothing. It's either fundamental or it's rational basis. But even if it's not fundamental, does anything go? I mean, or look at it this way. Could the government revoke a passport for anyone who just has a tax debt? They owe taxes. So we're going to revoke the passport. Would that be constitutional? Well, that's not what 7345 does. I understand that. If I were asking 745, I would say so. I'm asking how far this really goes. Well, that would be pay their taxes. Can the government revoke the passport? Is that constitutional? Well, I mean, given that that's not an issue, I'm not sure. Well, it's not an issue, but it might help us. It might help us with the issue we have. If you could address that question. Well, I mean, if you are suggesting that the government may need a higher, you know, may need to prove something more than simply a rational basis, if this court is considering an intermediate scrutiny standard, we would say that the statute meets that as well. In the same way that the child support debt statutes were also upheld under either rational basis or intermediate scrutiny. And they're basically, they're very similar schemes, although 7345 is much more narrow in who it affects and the due process considerations that are given to people who are subject to it. So your answer is that the government, that Congress could pass a statute saying that because it would still be analyzed under the rational basis framework, as the law exists now. Is that your position? Well, under this court's standards, if the right is not fundamental, then a rational basis standard applies. Now, obviously, it has to be reasonably related to the government's interest. And so I can't speculate on a statute that might have absolutely, that might be only tenuously related or, you know, overbroad or something. But as a general principle, under this court's rules, the rational basis test applies. So, yes. Well, under this court's rules, I think that I get... I'm not criticizing your answer. I'm just asking, we're trying to get a feel for what the breadth of the rules that's involved here. So it really is kind of an issue as we try to figure out what should be allowed, what shouldn't be allowed, what's the standard, what's the framework. And so to ask you that question, third question, which is how far is this rule that you're proposing go? If a statute meets the rational basis test, then that is what is required. And so Congress could feasibly pass another law addressing tax collection, but has not done so here. I don't know what to say beyond what this court's own precedents say. Once we say the rational basis is the standard, then the next thing is Congress adopts legislation saying, well, airport airlines are busy and we've had COVID and now we don't have enough passengers. So we are now going to have quotas on how many passports we're going to issue. We won't let anybody fly out of this country unless the airlines have a 25% capacity limit, et cetera, et cetera, et cetera. I could just conceive all the regulations that the bureaucracy could conceive. Surely it can't be just rational. There's a rational basis for everything. Well, Your Honor, again, if this court were to depart from, I mean, we are bound by this court's precedents. Arthur McEwen said, let's go to intermediate scrutiny. And so I had my clerks rush to the libraries looking for any support for Judge McEwen's argument. But Judge McEwen didn't have any authorities and we couldn't find any either. So we're not allowed to go there, right? Well, the state of this court's precedent is that if something is not a fundamental right, then a rational basis applies. If this court were to depart from that, we do think that this statute would meet intermediate scrutiny. The enforcement of tax laws is vital to the efficient collection of revenue for the government and taxes are the lifeblood of government. Well, let's go there. Just to reframe this just a little bit, what if we're in a situation where we have some reluctance in saying this is a fundamental right, but we also have some reluctance in saying that, well, rational basis is the right level of review. Right. We think international travel really does stand in a different posture than a lot of other interests that are subject to rational basis review. If that's where we are, what's your advice to the panel on how it should approach this issue? Well, Your Honor, this court can find that international travel is not a fundamental right and then I would point this court to the cases in the child support arena where the courts didn't expressly find whether rational basis or intermediate scrutiny applied because it found that the statute met either of them. I don't know that this court actually needs to decide which level of scrutiny applies in this case because the statute would meet either, we think. I'm almost out of time. I don't know if this court has further questions on any of the other topics. Well, as long as you've got some time, let me just ask you one question about one of the Supreme Court cases that you rely upon, which is as an avarian, it declined to apply strict scrutiny on an international travel restriction. There, it dealt with social security benefits and it seemed like the burden on international travel was really just incidental compared to the revocation of a passport altogether. So why should we rely on a case like that? Well, what we're citing as an avarian for is specifically that the individual in that case had challenged, had asked the court to decide whether internet encouraged the court to find that the two rights were equivalent. And as an avarian expressly rejected that, said they're not equivalent. And then it went a step further and said that restrictions on international travel are not to be judged by the same standard as interest as interstate travel. It also held that the lot issue there had an incidental effect. We think those are two alternate bases for finding that strict scrutiny doesn't apply. So that's what we're mainly relying on as an avarian for, is to show that it's not a fundamental right. And my time is up. Thank you, counsel. Unless my colleagues have further questions, I think we're ready to hear from you. We could talk about this all day. Counsel. Thank you, your honor. I'm available if the court wants to go over. Briefly put, it sounds like the court is thinking in terms of intermediate scrutiny. I direct the court. On my part, I'd appreciate it if you would summarize for my thinking for me. I think I'm capable of doing that for myself. Thank you. Our brief addresses the intermediate scrutiny analysis. Briefly put, in our common law tradition, we do not imprison debtors. You don't throw a debtor in jail until they make them pay up. It's different for child support. Individual children's lives and welfare are at stake. That is why the prior child support passport revocation regime survived intermediate scrutiny in the Ninth Circuit unique case. Because in our common law tradition, courts can hold deadbeat parents in contempt and put them in jail if necessary in order to get them to pay a child support debt. That is why this particular statute does not survive an intermediate scrutiny analysis. This is a situation where you'd be essentially putting an ordinary debtor in jail. As Judge Lucero noted, this is a type of debtor's prison. Ordinary debtor in jail just to make them pay up. And you're right. We got rid of debtor's prisons in the early 19th century. We don't do that anymore. What is the debtor's prison? Are you talking about living in the United States? Yes, in the sense that that's the way it would operate here. And we're not relying on strict debtor's prisons. We didn't even discuss debtor's prisons in the briefs. But it is analogous to a type of debtor's prison. In other words, it restricts a constitutional right as a means of coercion in order to force payment. And that's not how constitutional rights operate. For that reason, Your Honor, and since I'm going even further over, I would simply ask that the court issue the writ of mandamus that we asked for. And this is an opportunity to do so. To actually issue a writ of mandamus directed at Secretary of State Pompeo, directing him to reinstate Mr. Mayer's passport. Thank you, Your Honor. Sorry? Your time is up. Case is submitted. Counselor excused.